IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Edith Salazar and | |
| Emilie Kaminski | ) |
| individually | ) |
| and on behalf of all persons | ) |
| similarly situated as | ) CASE NO 23 CV 6280 |
| members of the Collective as permitted | ) |
| under the Fair Labor Standards Act; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| Acswiss Inc., d/b/a | ) |
| Checkers Restaurant | ) |
| And | ) |
| Alex M. Camen | ) **JURY TRIAL DEMANDED** |
| as an individual | ) **ON ALL COUNTS** |
| under FLSA and Illinois Wage Laws | ) |
| Defendants. | ) |

**PLAINTIFFS' LEGAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION
FOR FLSA COLLECTIVE NOTICE
And Related Relief**

NOW COME the Plaintiffs, Edith Salazar and Emilie Kaminski, individually and on behalf

of all others similarly situated, as FLSA Collective representatives, by and through their

undersigned counsel of record, and motions this Honorable Court to allow for preliminary

Notice to the FLSA Collective of this litigation and the opportunity for Defendants' similarly

situated servers to join this Collective Action, and for Disclosure of Potential Opt-In Plaintiffs'

Contact Information, and Court-Approved Notices, and in so doing states the following:

## I.   NATURE OF THE ACTION

This case is about the theft of tips from servers working for the Defendants at their Union

Illinois location. (See Plaintiffs' First Amended Complaint; Docket Document #5; hereinafter

referred to as "Cmplt"; ¶¶ 4-6, 28-29, 39-48).  Plaintiffs' Complaint seeks recovery of unpaid

wages and/or tips as a result of Defendants' misappropriation of Plaintiffs' tips via a policy that takes 5% of all the servers credit card tips, without any legal justification, under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b). (Id. ¶ 7).

Plaintiffs claims and those of the prospective FLSA Collective include that other servers are owed wages due to theft of servers' tips which causes Defendants to lose the "tip rate exemption" as it is void via Defendants' tip theft for all members of the FLSA Collective. (Id. ¶¶ 8, 17, 36, 43-54). Plaintiffs allege that Defendants utilized the tip rate exemption from FLSA minimum wage for tipped employees, paying Plaintiffs and Collective members less than the FLSA minimum wage of $7.25 per hour, and by taking 5% of the Plaintiffs/collectives' tips, Defendants lose the legal right to pay at a sub-minimum wage rate. (Id. ¶¶ 43-54).

## DEFENDANTS' TIP THEFT POLICY

During relevant times preceding this action, Defendants employed servers as "tipped employees" in Union Illinois. (Id at ¶¶ 17, 36-42, 58). Defendants required their tipped servers to participate in unlawful tip theft policy. The Defendants Tip Theft Policy is/was that servers paid the employer 5% of their credit card tips, allegedly for credit card fees. (Id). However, as the credit card fees actual cost a mere 2% or less and Defendants are retaining substantial amounts of the servers' tips in violation of DOL regulations and the FLSA.

As a result of these thefts of tips, the Defendants chosen pay method, ie: paying a tip rate, is invalidated. (Cmplt. ¶¶ 4, 39-48). For an employer to be allowed to pay a tip rate of pay (less than $7.25), the Defendants must follow ALL of the rules/regulations, including the regulation that the servers retain ALL of their tips. The most explicit tip rate/tip deduction regulation reads:

> "[A]n employer must notify its employees of any required tip pool
> contribution amount, may only take a tip credit for the amount of tips each
> employee ultimately receives, and may not retain any of the employees' tips
> for any other purpose.". 29 C.F.R. § 531.54

Here Defendants have retained substantial portion (2-3%) of the tips of the Plaintiffs' and other server, thus the Defendants' claim of paying a tip rate and/or use of the tip rate exemption is void. (Cmplt. ¶¶ 4, 39-48 ).

This Motion seeks to protect the rights of the current and former servers affected by Defendants' tip thefts. Plaintiffs request permission to send Notices to those servers working for the Defendants pursuant to Section 16(b) of the FLSA, 29 U.S.C. §216(b), informing them of their right to join this case and allowing similarly situated servers to decide whether to seek their unpaid wages and recover their pilfered tips. Without the requested court-ordered notice, many workers will never learn about this case and their viable claims will silently slip away under the FLSA statute of limitations.

Plaintiffs' ably support this Motion via an Affidavit, and the detailed allegations of the Complaint. By and through this evidence Plaintiffs demonstrate that the FLSA Collective of tipped servers are/were victims of a common tip-theft policy that violated the FLSA. Plaintiffs have thus provided more than the "substantial allegations" necessary to satisfy the "lenient standard" for conditionally certifying a collective action and authorizing notice under 29 U.S.C. §216(b).

## II.    STATEMENT OF RELEVANT FACTS

Defendants own and operate a restaurant in Union Illinois. (Cmplt ¶28). Both of the named Plaintiffs were employed by Defendants as servers. (Cmplt ¶ 26). As tipped employees, they were paid an hourly rate under minimum wage, commonly referred to as a "tip rate". (Cmplt ¶¶ 2, 41, 43). As per regulations (29 C.F.R. § 531.54) Plaintiffs also were required to retain all of their

tips paid to them by customers. (Cmplt ¶¶ 4, 45-48).

Plaintiffs are similarly situated to all other servers working for Defendant. Plaintiff testifies that all Defendants' servers had 5% of their credit card tips retained by the Defendants. (See Affidavit of Edith Salazar; attached to this Memorandum as Exhibit 1). (Ex. 1 ¶¶ 24-36).

Plaintiff testifies that ALL Defendants' servers have their tips stolen. *(Id)*. More specifically, the Defendants policy works like this: the employee serves a table, receives a credit card tip from that customer. Defendants take that tip and subtract from it 5% of the tip, and retain those tip funds, paying out the difference to the server in cash the same day as the shift worked. (Ex. 1 ¶¶ 12-15). While Defendants claim that the retained tips cover credit card fees/costs, those fees are far less than 5% that Defendants deduct and retain. (Ex. 1 ¶¶ 16-19, 22-23). Lastly, Plaintiff also testifies that she is similarly situated as she and the other servers shared the same job duties, (Ex. 1 ¶¶ 37-40), as well as sharing application of Checker's tip theft policy. (Ex. 1 ¶¶ 24-36).

## EVIDENCE

### Plaintiff Affidavit and Attached Supporting Documents

In Support of this Motion for FLSA Collective Notice, Plaintiffs' first present an Affidavit from Plaintiff Edith Salazar. In this Affidavit Plaintiff testifies that she was an employee of the Defendants for six months (Ex. 1 ¶ 10) and that the tip theft policy was applied to her by Defendants. (Ex 1 ¶¶ 10-15). Plaintiff further testifies that the tip theft policy was applied to all servers and that those other servers are similarly situated to herself.

(Ex. 1 ¶¶ 24-36). Further Plaintiff specifically names six other servers that are similarly

situated. (Ex. 1 ¶ 34 a-f). Plaintiff names the following persons as readily known to her[1]:

1. Brandy L. Veurink
2. Molly Fritz
3. Charise Levin
4. Allison (last name not known to Plaintiff)
5. Erica (last name not known to Plaintiff)
6. Libby (last name not known to Plaintiff) (Ex. 1 ¶ 34)

These same names are also found on Defendants business records, the schedules

of servers. Plaintiffs also submit these business records as further evidence that others are

similarly situated to the Plaintiffs. (See Checkers' servers schedules for September and

November of 2021; attached to this Memo as Exhibit 5)

Regarding likely claims of hearsay, the schedule documents are business records,

and/or admissions against interest. Additionally in **Howard v. Securitas Security Services**

**USA, INC** Case No. 08 C 2746. At 3 (ND Ill. Gottshall; 1/20/2009) allowed use of Hearsay

documents in considering whether to issue a FLSA Collective Notice. The Court's finding

reads in part:

> …..courts are split on whether it is appropriate to consider inadmissible evidence, such
> as hearsay, at this stage. *See Adair v. Wis. Bell, Inc.,* No. 08 C 280, 2008 WL 4224360,
> at *8 (E.D. Wis. Sept. 11, 2008) ("The courts, including those in [the Seventh C]ircuit,
> are split as to whether a plaintiff may rely on inadmissible evidence to make the
> requisite factual showing for conditional certification."). *Compare Molina,* 566 F.
> Supp. 2d at 788 ("Even if this testimony is hearsay that could not be considered at trial,
> it may be considered in deciding whether to permit a collective action."), *with Acevedo
> v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550, 555 (N.D. Ill. 2008) ("Despite the liberal
> standard applied at step one of conditional certification, courts still require plaintiffs to
> make factual allegations supported by admissible evidence.").

---

[1] These six named Checkers's Servers are not the only persons that are similarly situated,
rather these six Servers are those names readily available to Plaintiff at this time.

A strict application of the Federal Rules of Evidence does not comport with the court's understanding of relative evidentiary burdens imposed under the two-stage certification approach. *See Thiessen,* 267 F.3d at 1102-03 (distinguishing between the level of scrutiny applied during the two certification stages). On a § 216(b) motion, the case is at a preliminary stage, the motion is non-dispositive, and, typically, the plaintiff files without the benefit of discovery. *White v. MPW Indus. Servs., Inc.,* 236 F.R.D. 363, 368 (E.D. Tenn. 2006). These considerations suggest that "'plaintiffs need not come forward with evidence in a form admissible at trial.'" *Id.* (quoting *Coan v. Nightingale Home Healthcare, Inc.,* 1:05-CV-0101-DFH-TAB, 2005 WL 1799454, at *1 n.1 (S.D. Ind. June 29, 2005)).

<u>Detailed Allegations</u>

Lastly Plaintiffs' Complaint is not a typical two or three page "Notice only" pleading complaint. (See Docket Document #1 and 5). Rather Plaintiffs' pleading is detailed, twenty pages long, chalked full of detailed factual allegations. Such detail is yet another element that should support allowance of this court for a FLSA Notice.

The plaintiffs may meet this burden by making substantial allegations of class-wide discrimination, that is, detailed allegations…..." <u>Haynes v. Singer Co., Inc.,</u> 696 F.2d 884, 887 (11th Cir.1983) <u>Sperling v. Hoffman-LaRoche,</u> 118 F.R.D. 392 at 406-07, (D.N.J.1988) **<u>Grayson v. K Mart Corp</u>**., 79 F.3d 1086, 1096 (11th Cir.), cert. denied, 519 U.S. 982, 117 S.Ct. 435 (1996).

**III. ARGUMENT**

Pursuant to 29 U.S.C. § 216(b), Plaintiffs file the current Motion for Conditional Certification as representatives of the prospective FLSA collective under 29 U.S.C. § 216(b) and submits this Legal Memorandum and Exhibits in support of that Motion.

Plaintiffs ask this Court to certify an FLSA Collective consisting of the following persons:

All servers of Defendants employed any time after August 28, 2020, and continuing thereafter through the date on which final

judgment is entered in this action and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b).

### III.     COLLECTIVE ACTION STANDARD

In **Hoffman-La Roche, Inc. v. Spering**, the Supreme Court of the United States held that district courts have the discretion to certify a class and issue orders authorizing notice to potential members of a collective action of the opportunity to "opt-in" to a collective action. 493 U.S. 165, 169, 110 S.Ct. 482 (1989). This is directly contrary to the FRCP 23 class action mechanism of "opting out" of a certified class. The key issue presented to the court exercising such discretion in certifying a collective class is whether the persons to whom notice would go are "similarly situated" to plaintiffs. 29 U.S.C. § 216(b); **O'Brien v. Ed Donnelly Enters., Inc.,** 575 F.3d 567, 583 (6th Cir. 2009); **Thiessen v. General Electric,** 267 F.3d 1095 (10th Cir. 2001); 29 U.S.C. § 216(b). This inquiry is vastly different from that required under FRCP 23.

For a collective action to be created under '216(b), an employee need only show that he/she is suing his/her employer for himself/herself and on behalf of other employees similarly situated. **Grayson v. K Mart Corp**., 79 F.3d 1086, 1096 (11th Cir.), cert. denied, 519 U.S. 982, 117 S.Ct. 435 (1996). Plaintiff claims need not be identical to those of putative class members, but need only be similar. *Id*.; **Tucker,** 872 F.Supp. at 947. Plaintiffs need only demonstrate 'a reasonable basis' that a class of similarly situated may exist. **Grayson** 1097.

The standard plaintiffs must meet is thus considerably 'less stringent' than the proof required pursuant to Fed.R.Civ.P. 20(a) for joinder or Fed.R.Civ.P. 23 for class certification. **Grayson v. K Mart**, 79 F.3d at 1096. See also, **Mooney v. Aramco Services Co**., 54 F.3d 1207, 1214 (5th Cir., 1995)(applying a "fairly lenient standard" for '216(b) determinations). A collective action does not, therefore, have to meet the Rule 23(a) criteria of numerosity,

commonality, typicality, and adequacy of representation.  It is also abundantly clear that the notice motion is not a ruling on the merits of the plaintiff's claims.  **Grayson**, 79 F.3d at 1099 n.17; **Garner,** 802 F.Supp. at 423 n.3.  See also, **Eisen v. Carlisle & Jacquelin**, 417 U.S. 156, 177 (1974) (plaintiffs need not demonstrate they will prevail on the merits to obtain class certification under the more demanding requirements of Fed.R.Civ.P. 23.

Discovery **is not** necessary prior to a determination on the issue of notice, **Mooney vs. Aramco Services Co.,** 54 F.3d 1207, 1213-1214 (5th Cir. 1995).  Rather, a collective action is to be authorized and notice issued when the plaintiffs have demonstrated a reasonable basis for the allegations of the complaint. **Grayson**, at 1097. Even if Defendant provides contrary evidence, motion is not lost if counter-evidence engages the defendant's proof. **Id** at 1099.

In sum, all plaintiffs need demonstrate at this stage of a collective action is that 'there are other employees of the . . . employer who [may] desire to opt-in and that these other employees are similarly situated with respect to their job requirements and with regard to their pay provisions. **Dybach,** 942 F.2d at 1567-68; **Tucker**, 927 F. Supp. at 947. Plaintiffs may establish this through detailed allegations in the complaint with some sworn evidentiary support and business records of Defendants. (see Plaintiff's detailed Complaint; Docket Document #1 and 4) (See also attached Plaintiff's Affidavit). (Ex. 5). **Grayson** at 1097.

One of purposes of notice is to apprize potential plaintiffs of the pendency of the action and to advise them of their right to opt into the case. Without notice defendants, who are violating the FLSA, will be allowed to continue the violation and continue to steal tips of the collective and not pay minimum wages and/or overtime via the tip theft policy. (Id). As demonstrated, plaintiff has more than meet this standard for issuance of notice under

'216(b).(See Docket Documents #1 and 5 and Plaintiff's Ex. 1).

This case is at the notice stage and as such is subjected to a more lenient standard based solely on pleadings and affidavits. The Plaintiff's pleadings and attached Plaintiff's Affidavit contain an abundance of information supporting Plaintiffs' claim that there are many other individuals similarly situated. (Ex. 1.) (Plaintiffs represent a class of servers paid at a tip rate who similarly had wages taken via tip theft. (Id).

Every tip-rate server at the Defendants location was subject to Defendants' universal policies, which violated the FLSA. Plaintiffs and class members were universally deprived of tips via Defendants retaining 2-3% or more of their tips. Defendants accordingly failed to pay Plaintiff and proposed class members minimum or overtime wages under the law. (See Cmplt. generally). (Ex. 1).

### TIP DEDUCTIONS ALLOWED AND DISALLOWED

Defendants paid Plaintiffs at a reduced rate of pay, known as the tip rate. Defendants are allowed to do so, but only if Defendants follow all the requirements for such sub-minimum wage payment. Defendants took deductions from Plaintiff's tips for covering of the costs of credit card fees. Plaintiffs have plead and testified that Defendants' deductions are taken in excess of the credit card fee amounts. (Cmplt. ¶¶ 6, 39-54) (Ex. 1 ¶¶ 14-23).

The legal foundation for allowing employers to take a deduction from servers' tips for the cost of credit card fees was first found in **Myers v. Copper Cellar**. 192 F.3d 546, 552-53 (6th Cir.1999). In **Myers** the court found that the deduction for credit card fees was permitted as the court analogized the tip deduction to be that of a type of "tip pool". The actual cite reads:

> Additionally, an employer's extraction from each charged employee tip of a fixed composite percentage handling fee, which reasonably reimburses it

in the aggregate for its total expenditures related to processing its employees' total credit card 556*556 tips, may be **_analogized_** to a Congressionally-sanctioned tip pool. *See* 29 U.S.C. § 203(m). (Id. emphasis added)

Thus the credit card fee deduction is allowed as a type of "tip-pool" under 203(m).

Section 203(m) reads in part:

> The additional amount on account of tips may not exceed the value of the tips actually received by an employee. The preceding 2 sentences shall not apply with respect to any tipped employee unless such employee has been informed by the employer of the provisions of this subsection, and all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips….

.

Thus, case law and rules require employers "take" is limited to the amount of costs: not more.

When a restaurant taking a tip credit to satisfy its minimum wage obligations withholds a portion of the server's tips received by credit card, such withholdings must be limited to the expense actually associated with collecting the credit card tips **Steele** v. **Leasing Enterprises, Ltd.,** 826 F.3d 237 (5th Cir. June 14, 2016) and 29 C.F.R. § 531.54 "[A]n employer must notify its employees of any required tip pool contribution amount, may only take a tip credit for the amount of tips each employee ultimately receives, and may not retain any of the employees' tips for any other purpose.". With the exception of a valid "tip pooling" arrangement, restaurants benefiting from a tip credit must ensure that "all tips received by [the servers] have been retained by [the servers]." 29 U.S.C. § 203(m). The court basically holds that this rule is violated when withholdings for credit card tips go beyond the fees actually charged by the credit card company

Thus while tip deductions are permitted for credit card costs/fees, Defendants' deductions must be equal to the credit card processing costs, not more. Here Defendants take far more than is permitted under the law.  (Cmplt. ¶¶ 6, 39-54) (Ex. 1 ¶¶ 14-23).

### The Court Should Approve/Allow the Distribution of a Collective Action Notice.

The Court should authorize collective notice at this stage of litigation as it would appropriately advance the remedial goals of the FLSA and promote judicial efficiency. Specifically, the Court should authorize the sending of an FLSA Notice and consent to join. Section 216(b) of the FLSA authorizes trial courts to provide that court-approved notice be sent to potential plaintiffs to inform them of an action and allow them an opportunity to opt-in. In **Hoffman-La Roche**, the Supreme Court of the United States held that such notice should be sent in the early stages of litigation, noting the "wisdom and necessity" of early court involvement in managing opt-in cases and facilitating notice.  The Court further observed that allowing plaintiffs to proceed collectively benefits by allowing Plaintiffs to pool resources and benefits the judicial system by allowing for efficient resolution of common issues. Sending court-approved notice early in a case promotes the "broad remedial purpose" of the FLSA and promotes efficient management by insuring that similar cases are combined in one proceeding.

### TIP POLICIES ARE COMMONLY APPLIED TO ALL SERVERS

As set forth above, Plaintiffs were impacted by tip thefts, which were commonly applied to all servers of Defendants. (Ex. 1 ¶¶ 24-36). These practices were common throughout the class, and thus raise common questions of fact or law which substantially predominate over any issues particular to any one class member. Judicial economy, along

with the important policy aims underlying the FLSA[2], will be served best if the common factual and legal questions arising these practices are adjudicated collectively in one proceedings.

      All of these factors combined are sufficient to meet the "modest factual showing" that Plaintiffs and are "similarly situated" to the class for the conditional certification and notice stage. Indeed, courts in this district have conditionally certified collectives which were larger and less homogenous than that proposed herein. **Russell v. Illinois Bell Telephone**, 575 F. Supp. 2d 930, 937 (N.D.Ill. 2008)(conditionally certifying off-the-clock collective action to employees in four separate call centers); **Jirak**, 566 F. Supp. 2d at 848 (granting certification of a class of pharmaceutical representatives who worked in six different franchises); **Hundt v. DirectSat United States LLC,** No. 08 C 7238, 2010 U.S. Dist. LEXIS 51116 (N.D.Ill. 5/24/10)(finding that warehouse managers, warehouse supervisors, general managers, and field managers are similarly situated where where they had similar job duties and were uniformly classified as "exempt"); **Smallwood v. Ill.Bell.Tel.Co.,** No. 09 C 44232, 2010 U.S. Dist. LEXIS 44232 *18 (N.D.Ill. 5/6/10) Minor factual differences among the class members are not sufficient to defeat certification at the Notice stage, where as here, there is a common practice which impacts the class. **Garza v. Chicago Transit Authority,** No. 00 C 0438, 2001 U.S. Dist. LEXIS 6132 *9

---

[2] ₁The FLSA is remedial in nature, and "should be liberally construed so as to effectuate its humanitarian purposes." *Walling v. Consumers Co.,* 149 F.2d 626, 630 (7th Cir. 1945). In urging Congress to enact the FLSA, U.S. President Franklin Delano Roosevelt eloquently articulated its aims, and his words which bear remembrance: "Our nation so richly endowed with natural resources and with a capable and industrious population should be able to devise ways and means of insuring to all our able-bodied working men and women a fair day's pay for a fair day's work. A self-supporting and self-respecting democracy can plead no justification for the existence of child labor, no economic reason for chiseling workers' wages or stretching workers' hours." H.R. RP. 101-260, at 9 (1989), *reprinted in* 1989 U.S.C.C.A.N. 696, 696-97

(N.D.Ill. 5/8/01) "That the Plaintiffs and other potential plaintiffs may have different jobs in the rail system, earn different amounts of money, and have attended different amounts or types of training does not mean that they are not operating under the same policies that allegedly entitle them to overtime pay". Here the Plaintiffs and collective's jobs, titles and duties are duplicative, all the collective members (including Plaintiffs) are servers working for Defendants at one location and all subject to the 5% kick-back policy. (Cmplt. ¶¶ 6, 17, 28-29, 36-48)(Ex. 1 ¶¶ 24-40).

## NOTICE REQUESTS

## US MAIL NOTICE REQUESTED

Plaintiffs request that the Notice be allowed via US Mail as is normal in these FLSA Collective Notice cases. Plaintiffs submit a proposed draft Notice for the court's review. (Proposed Mail Draft Notice, attached to this Memo as Memo Exhibit 2).

## NOTICE POSTING AT DEFENDANT LOCATION

Also because Plaintiffs anticipate being unable to reach many of the potential class members due to poor or non-existent record keeping by Defendants. (See Cmplt. ¶ 55). Thus Plaintiff is suspect that the contact information provided by Defendants will be similarly defective. Thus Plaintiffs ask that this Court should further direct Defendants to post the proposed notice in a conspicuous location at Defendants' restaurant where class members would be most likely to see the notice. **Ondes v. Monsanto Co.,** U.S.D.C. Case No. 4:11-CV-197 (JAR) (ED. Mo. Jan. 10, 2012) (noting that "the Court does not require Plaintiff to provide a showing that mailed notice would be insufficient before it approves posting a notice in the workplace"); **Diaz v. Quality Crab Co., Inc.,** U.S.D.C. Case No 2:10-CV-15-H (ED N C Sept 27, 2011) (directing defendants to "post the court-approved notice, in both

English and Spanish, at the class members' place of employment and in the housing provided by defendants to their H-2B employees"). **Blakes v. III. Bell**., U.S.D.C. Case No 11-CV-336. *18 (N.D. Ill June 15. 2011) (granting plaintiffs permission to post bilingual notices at defendant's place of business "where other employment-related postings are placed"). **BWhitehorn,** 767 F. Supp. 2d 445, 449 ("Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail."); Plaintiffs again provide for consideration of the court the attached proposed In-Store FLSA Notice. (see Proposed In-Store Notice, attached to this Memo as Exhibit 3).

## EMAIL MESSAGE NOTICES

Lastly Plaintiffs ask that the court allow a court authorized Notice via email to the email addresses of the class members. Courts are now allowing such Notices via email. **Davis,** 2009 WL 102735, at *15 (granting class notice via postal mail and email). **Butler v. DirectSAT USA, LLC**, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("With regard to the use of email to notify potential plaintiffs of this litigation, 'communication through email is [now] the norm.'" (quoting *In re Deloitte & Touche*, *LLP Overtime Litig*., 2012 WL 340114, at *2 (S.D.N.Y. Jan. 17, 2012)); Plaintiffs provide a draft proposed Email Notice for consideration of this Court. (see proposed Draft Email Notice, attached as Exhibit 4).

**b. The Court Should Order Defendants to Provide the Names and Last Known Home, Work, Phone Numbers and Email Addresses of Potential Opt-in Plaintiffs.**

To facilitate the sending of the notice and consent forms, Plaintiffs also ask this Court for an Order directing Defendants to provide all contact information of any server who worked for Defendants any time three years prior to the filing of this suit on August 28, 2023. This includes but is not limited to: (1) the names of each and every potential Plaintiff who

worked for Defendants any time after August 28, 2020, including any aliases they may have gone by; (2) the last known home and work addresses of the servers for the same time period; and (3) email addresses of any kind which Defendants is aware of for any such server, (4) phone numbers of any kind which Defendants are aware of for any server. While other servers joining of the Collective is contingent on filing of a Consent, Plaintiffs asks the Notice period be based on the filing date, not the Notice date.

## IV. CONCLUSION

Plaintiff's burden at this stage is lenient and easily met. Attached to Plaintiff's Motion is the Declaration of Plaintiff who worked for Defendants for six months. (Ex 1; ¶ 10). She describes her duties and announces the existence of additional similarly situated server. (Ex. 1; ¶¶ 11, 37-40). (Ex. 5). This sworn Declaration provides a sufficient factual description of the uniformity of treatment of Plaintiff and members of the putative class endured as a result of Defendants' policies and procedures based on Defendants' policy and procedures which apply to all employees of Defendant. (Ex. 1. ¶¶ 24-40).

For these reasons, Plaintiff respectfully requests that this Court:

(1) Certify the requested collective and allow an opt-in period of six (60) days, beginning from the date of mailing/posting and other means of communications;

(2) Order Defendants to produce the full names, aliases, addresses, phone numbers, email addresses and last date(s) of all potential Collective members, and

(3) the last known work and home physical and email addresses and phone numbers of employees who worked for Defendant from August 28, 2020 to the present, no later than two weeks after the date of the entry of the Order;

(4) Approve a notice; and

(5) Approve transmittal of the Notice to members of the class via

    a) US Mail,

    b) Posted Message at Defendants' work site

    c) email,

Respectfully submitted

/S/ John C. Ireland

Counsel for Plaintiff, Collective

15

John C. Ireland
The Law Office of John C. Ireland
636 Spruce Street
South Elgin ILL   60177
630-464-9675  Fax 630-206-0889
attorneyireland@gmail.com

dated 9/8/23